[Cite as *In re A.J.*, 2014-Ohio-3754.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| IN RE: A.J., B.J., & M.R. | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| (Father's Appeal) | : | |
| | : | Case No. 14-CA-26 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2011-0601; F2011-0603; F2012-0447

JUDGMENT:  AFFIRMED

DATE OF JUDGMENT ENTRY:  August 26, 2014

APPEARANCES:

For Father-Appellant:

MICHAEL R. DALSANTO
3 South Park Place, Suite 220
Newark, OH 43055

For Mother-Appellant

DREAMA BOGART
P.O. Box 30402
Gahanna, OH 43230

For Licking County DJFS-Appellee:

LIA MEEHAN
20 S. Second Street, Fourth Floor
Newark, OH 43055

Guardian ad Litem:

SHEENA SJOSTRAND-POST
195 E. Broad St.
Pataskala, OH 43062

*Delaney, J.*

{¶1}   Father-Appellant Robert Johns appeals the April 4, 2014 judgment entry of the Licking County Court of Common Pleas, Juvenile Division terminating his parental rights as to B.J. and A.J.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Appellant Robert Johns is the Father of B.J. (born June 12, 2001) and A.J. (born November 23, 2004). Appellant Crystal Rosumenko is the Mother of B.J., A.J., and M.R. (born May 18, 2012). Paul Rosumenko is the father of M.R.

{¶3}   Licking County Department of Job and Family Services ("LCDJFS") became involved with the family in June 2011. A voluntary case was opened due to allegations of Mother's substance abuse and poor home conditions. Mother was enrolled in the Licking County Alcoholism Prevention Program (LAPP). Mother resided with Paul Rosumenko and married him on September 5, 2011. Paul Rosumenko is a registered sex offender with past charges of domestic violence, menacing, and a violation of the civil stalking protection order. In October 2011, Paul Rosumenko was sent to prison for a probation violation. Mother's case with LAPP was closed because of Mother's poor attendance.

{¶4}   In October 2011, LCDJFS filed a dependency complaint for A.J. and B.J. The children were placed under protective supervision and placed in Father's home. In December 2011, A.J. and B.J. were adjudicated dependent.

{¶5}   While A.J. and B.J. resided with Father, LCDJFS provided Father with multiple resources to assist with the care of the children. B.J. had anger, anxiety, and attachment issues. A.J. was diagnosed with post-traumatic stress syndrome and

attention deficit disorder. There were concerns that A.J. was sexually abused. Both children took medication. Father at one point due to a lack of medication for one child, gave the one child the other's medication. The children suffered from lice and Father's home had bed bugs. Father moved from the home to a one-bedroom apartment. Father had serious health issues related to a hip replacement requiring Father to stay in a nursing home during his recovery in August 2012. The LCDJFS resources assisted Father with understanding the need to keep a clean and safe home and provide the children with structure. The resource providers stated there was no doubt Father loved his children, but he struggled with caring for the children and their special needs. One resource provider stated that Father would hear but not listen to the recommendations.

{¶6} On March 12, 2012, LCDJFS filed a motion to modify in B.J.'s case, asking that his disposition be modified from protective supervision to temporary custody, due to B.J.'s behavioral issues. While residing with Father, B.J. was truant from school at least 45 days. B.J. stabbed a teacher with a pencil. On May 24, 2012, the court granted the motion and B.J. was placed in a treatment foster home.

{¶7} A.J. was returned to Mother's custody, subject to protective supervision. While A.J. resided with Mother, Mother was residing with Nick Hutchinson and his daughter. Nick Hutchinson was a violent alcoholic. There were unsubstantiated allegations that Nick Hutchinson and his daughter sexually abused A.J. LCDJFS received complaints of problems in Mother's home such as parties and questionable people in the home.

{¶8} M.R. was born on May 18, 2012.

{¶9}   On July 17, 2012, LCDJFS sought and obtained an ex parte emergency order granting shelter care of A.J. and M.R. Mother tested positive for oxycodone. Mother has been diagnosed with an opioid related disorder. Shelter care was granted on July 18, 2012. On November 9, 2012, M.R. was adjudicated dependent and placed in the temporary custody of LCDJFS. A.J. was also placed in the temporary custody of LCDJFS. A.J. was placed in the treatment foster home with B.J.

{¶10} On May 17, 2013, Paul Rosumenko was sentenced to six years in prison for aggravated burglary and domestic violence, where Mother was the victim of the domestic violence charge.

{¶11} On May 31, 2013, LCDJFS filed a motion for permanent custody. A hearing before the magistrate was held on October 11 and 14, 2013.

{¶12} Ryan Houck, the family's caseworker, testified LCDJFS has worked with the family for two years and five months and has not seen improvement in Mother or Father to allow for reunification with the children. The guardian ad litem recommended that permanent custody be granted to LCDJFS.

{¶13} On November 26, 2013, the magistrate issued his decision recommending that permanent custody of A.J., B.J., and M.R. be granted to LCDJFS.

{¶14} On December 9, 2013, counsel for Father filed objections to the magistrate's decision. Mother also filed objections to the magistrate's decision. The trial court set a non-oral hearing on January 17, 2014. The trial court appointed Father new counsel on December 17, 2013. On January 17, 2014, counsel filed a motion for extension of time to file supplemental objections. The trial court denied the motion.

{¶15} On April 4, 2014, the trial court adopted the decision of the magistrate and granted permanent custody of A.J., B.J., and M.R. to LCDJFS.

{¶16} It is from this decision Father now appeals.

**ASSIGNMENTS OF ERROR**

{¶17} Father raises three Assignments of Error:

{¶18} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN SUMMARILY DENYING APPELLANT'S MOTION TO EXTEND TIME TO FILE SUPPLEMENTAL OBJECTIONS. R. AT 189.

{¶19} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. R. AT 191.

{¶20} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. R. AT 191."

**ANALYSIS**

**I.**

{¶21} Father argues in his first Assignment of Error the trial court erred in denying his motion for extension to file supplemental objections. We disagree.

{¶22} Father's original trial counsel filed objections to the magistrate's decision on December 9, 2013. The trial court set the matter for a non-oral hearing on January 17, 2014. The trial court appointed new counsel for Father on December 17, 2013. The

hearing transcript was filed on December 31, 2013. Father's new counsel filed a motion for extension of time to file supplemental objections on January 17, 2014. The basis for the motion was that counsel was unaware the transcript was available on December 31, 2013. The trial court denied the motion.

{¶23} Counsel for Father states he was seeking a continuance of the non-oral hearing date. Juv.R. 23 states, "Continuances shall be granted only when imperative to secure fair treatment for the parties." The decision to grant or deny a motion to continue is a matter entrusted to the broad discretion of the trial court. *McKinney v. Brunney*, 5th Dist. Fairfield No. 13-CA-41, 2014-Ohio-39, ¶ 28 citing *Hartt v. Munobe,* 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993). The term abuse of discretion implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶24} We find no abuse of discretion for the trial court to deny the motion for extension of time to file supplemental objections. Father filed objections to the magistrate's decision and the trial court made an independent examination of the magistrate's decision, transcript, and evidence presented.

{¶25} Father's first Assignment of Error is overruled.

## II., III.

{¶26} Father argues in his second Assignment of Error the trial court's judgment that the children could not or should not be placed with Father within a reasonable amount of time was against the manifest weight and the sufficiency of the evidence. Father contends in his third Assignment of Error it was against the manifest weight and

sufficiency of the evidence to find that it was in the best interests of the children to grant permanent custody to LCDJFS. We disagree.

{¶27} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541, 1997–Ohio–52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶28} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be

placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

{¶29} R.C. 2151.414(B) enables a trial court to grant permanent custody if the trial court determines by clear and convincing evidence that it is in the best interest of the child. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of

facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477, 120 N.E.2d 118.

{¶30} R.C. 2151.414(D) sets out the factors relevant to determining the best interest of the child. Said section states relevant factors include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶31} The trial court determined that despite the reasonable case planning and diligent efforts by LCDJFS to remedy the problems that led to the children being placed out of Father's home, Father failed continuously and repeatedly failed to substantially remedy the conditions that caused the children to placed outside of the home pursuant

to R.C. 2151.414(E)(1). The trial court determined the evidence showed that while Father had numerous resource providers, such as a Homemaker, Parent Mentor, and Home-Based Counselor, Father was not able to meet the special needs of A.J. and B.J. Due to the children's emotional issues, the children needed significant structure in their lives for them to recover. The resource providers had to instruct Father on the need to keep food in the house and to prepare meals to serve at appropriate mealtimes. While in Father's care, B.J. missed at least 45 days of school. While at Father's original home with the children, the children suffered from lice and the home was infested with bed bugs. At the time of the hearing, Father resided in a one-bedroom apartment where he planned that B.J. would sleep on an air mattress in the living room, Father would sleep on the couch, and A.J. would sleep in the bedroom. The caseworker noted that A.J. had most likely been sexually abused and required extra consideration of her privacy needs.

{¶32} The trial court further found under R.C. 2151.414(E)(16), Father had health issues that required Father to live in a nursing home for some time during his recovery from those health issues. The trial court found that Father's health issues in addition to the special needs of two children would exceed Father's ability to provide for the children.

{¶33} The record shows by clear and convincing evidence that LCDJFS has diligently assisted Father to remedy the conditions that caused the children to be removed from his home, but Father continued to struggle to meet the special needs of A.J. and B.J.

{¶34} The guardian ad litem recommended that it was in the best interests of the children that custody be awarded to LCDJFS. Visitation with Father went well. The

children stated they desired to live with Father or Mother. However, B.J. also remarked that he needed structure. The children were in a treatment foster home that provided them with structure and stability. B.J. and A.J. were attending counseling regularly and were making improvements in their emotional health, which was reflected in their improved behaviors at school.

{¶35} Upon review, we find the trial court's conclusions under R.C. 2151.414(E)(1) and (16) and best interest are supported by clear and convincing evidence. The trial court did not err in granting permanent custody of A.J. and B.J. to LCDJFS.

## CONCLUSION

{¶36} Father's three Assignments of Error are overruled.

{¶37} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.